UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

In re:         DENISE Y. DYE,                                              Case No. 12-36465-KRH
                                                                                    Chapter 13
                    Debtor.

## MEMORANDUM OPINION

The issue presented in this case is whether the Social Security income of a debtor's non-filing spouse should be included in the calculation of a Chapter 13 debtor's projected disposable income. The Court holds it should not. But notwithstanding the Court's holding in this regard, the proposed plan in this case still cannot be confirmed, as it fails to meet the liquidation test under section 1325 of the Bankruptcy Code.[1]

Denise Y. Dye (the "Debtor") filed a voluntary petition on November 12, 2012, under Chapter 13 of the Bankruptcy Code. The Debtor is married with a household of two. The Debtor's husband (the "non-filing spouse") did not file a petition for relief under the Bankruptcy Code. On November 20, 2012, the Debtor filed her Chapter 13 Plan (the "Plan"), together with amended schedules and statements. The Chapter 13 Trustee (the "Trustee") filed an Objection to Plan Confirmation (the "Objection"). An evidentiary hearing on the Objection was held on June 25, 2013, at the conclusion of which the Court requested briefs be submitted on the matter placed before it. The Trustee timely filed a brief in support of the Objection on July 16, 2013. The Debtor timely filed a brief in opposition to the Objection on July 30, 2013, which was corrected on July 31, 2013. A continued hearing on the Objection was conducted on August 7, 2013.

---

[1] "Bankruptcy Code" refers to Title 11 of the U.S. Code.

This memorandum opinion sets forth the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[2]  The Court has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 16, 1984.  This is a core proceeding, *id.* § 157(b)(2)(A), (L), in which final orders or judgments may be entered by a bankruptcy court, *id.* § 157(b)(1).  Venue is appropriate in this Court. *Id.* § 1409(a).

The Plan in this case does not provide for a full recovery to creditors.  In the light of the Trustee's Objection, the Court may only confirm the plan if "all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).[3]

Disposable income is "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended" "for the maintenance or support of the debtor . . . ." *Id.* § 1325(b)(2). The Bankruptcy Code defines "current monthly income" to

> (A) mean[ ] the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—
>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) include[ ] any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

[3] This subsection is triggered by an objection by either the trustee or an unsecured creditor to confirmation of the plan. § 1325(b).

spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act . . . .

*Id.* § 101(10A).

On the Debtor's Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposal Income (the "Official Form 22C"), the Debtor disclosed average monthly wages from employment of $4858.52. The Debtor also receives $950.00 a month from the rental of real property.[4] The Debtor included only a portion of the income attributable to her non-filing spouse on her Official Form 22C. The non-filing spouse is self-employed and he also receives social security income. While the Debtor disclosed the non-filing spouse's Social Security income, she only included the non-filing spouse's business income of $443.06 per month in her calculation of her projected disposable income.

At the evidentiary hearing, the Trustee argued that the non-filing spouse's Social Security income should be included in the calculation of the Debtor's projected disposable income. Between the evidentiary hearing on the June 25 and the continued hearing on August 7, the U.S. Court of Appeals for the Fourth Circuit (the "Fourth Circuit") handed down its decision in *Mort Ranta v. Gorman*, No. 12-2017, 2013 U.S. App. LEXIS 13426 (4th Cir. July 1, 2013). There, the Fourth Circuit held that "the plain language of the Bankruptcy Code excludes [the Debtor's] Social Security income from the calculation of 'projected disposable income,' but that such income nevertheless must be considered in the evaluation of a plan's feasibility." *Id.* at *2. Although that case did not concern income derived from Social Security benefits received by a non-filing spouse, this Court finds that the Fourth Circuit's rationale in *Mort Ranta* extends to

---

[4] The Debtor's Official Form 22C states that the monthly gross receipts are $1033.33 and ordinary operating expenses are $87.50, resulting in a net monthly real property income figure of $945.83. At the June 25 hearing, the Debtor and the Trustee stipulated that gross receipts were $1100.00 and ordinary and necessary operating expenses were $150.00, resulting in monthly real property income of $950.00. The Court will use the $950.00 figure in its analysis of the Debtor's projected disposable income.

3

exclude a non-filing spouse's Social Security income from consideration in determining the Debtor's projected disposable income.

"[A] debtor's 'projected disposable income' is based on the debtor's 'disposable income,' give or take any adjustments necessary to account for foreseeable changes in that income." *Id*. at *26; *see Hamilton v. Lanning*, 130 S. Ct. 2464, 2469, 2478 (2010). "Disposable income" is defined as the Debtor's current monthly income, less any amounts reasonably expended for certain expenses. § 1325(b)(2). The Bankruptcy Code's definition of "current monthly income" "excludes benefits received under the Social Security Act." *Id.* § 101(10A). The statutory exclusion is not limited solely to Social Security income received by the Debtor. Accordingly, the Social Security income received by a non-filing spouse should not be included in the calculation of current monthly income. The Debtor properly excluded that income in calculating her projected disposable income. Based on the Debtor's monthly wages of $4858.52 from her employment, plus the Debtor's net monthly rental income of $950.00 from her real property, plus the business income of $443.06 from her non-filing spouse, the Court finds that the Debtor's current monthly income is $6251.58.

In order to calculate the Debtor's projected disposable income "amounts reasonably necessary to be expended" "for the maintenance or support of the debtor" must be subtracted from this current monthly income figure. *See id.* § 1325(b)(2). The Bankruptcy Code explains that reasonably necessary expenditures are to "be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than" "in the case of a debtor in a household of 2 . . . individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals" *Id.*

4

§ 1325(b)(3). The Debtor's income exceeds the applicable median family income.[5] Section 707(b) provides that the expenses the Debtor is entitled to deduct from current monthly income shall, with certain enumerated additions,

> be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

*Id.* § 707(b)(2)(A)(ii)(I).

The Debtor used the National Standards applicable to a household of two to determine the figure she was entitled to deduct for "amounts reasonably necessary to be expended." The Trustee objects to the amount of this deduction. The Trustee argues that the Debtor should only be entitled to deduct one-half of this expense amount, as, otherwise, the non-filing spouse will enjoy the benefit of a disproportionate share of the Debtor's income.[6] The Trustee maintains that the non-filing spouse should be required to use his Social Security income to pay for his half of the household expenses.[7]

The Court rejects the Trustee's argument. The Fourth Circuit's decision in *Mort Ranta* clearly excluded Social Security income from the calculation of current monthly income. 2013 U.S. App. LEXIS 13426, at *2. The Trustee's argument would circumvent the Fourth Circuit's

---

[5] As stated on the Official Form 22C, the Debtor has a household of two. The Debtor's annualized current monthly income exceeds $64,593.00, the median family income for a two-person household in Virginia.

[6] The Trustee interprets section 707(b)(2)(ii)(I) of the Bankruptcy Code to only permit 22C deductions for a household including a spouse if the spouse has jointly filed or if the non-filing spouse is a dependent. The Trustee notes that the non-filing spouse is not a joint debtor, and argues that he is not a dependent of the debtor as he has income sufficient to support himself.

[7] If the Debtor were allowed only one-half of the expense allocation as the Trustee argues, then the Debtor would be entitled to less than the deduction amount available for a single-person household. For example, under the Trustee's proposal, the Debtor would only be able to deduct $514.50 on Line 24A of Official Form 22C. A single filer would be able to deduct $565.00. The Trustee's proposal would effectively punish debtors with spouses who "elect" not to file bankruptcy.

5

ruling by considering Social Security income for the purposes of calculating allowable expenses. The result would be tantamount to including the Social Security income in the calculation of projected disposable income. For these reasons, the Court finds that the Debtor properly used the National Standards applicable to a household of two.

The Debtor then deducted additional living expenses, as permitted by section 707(b)(2)(A)(ii). At the June 25 hearing, the Debtor and the Trustee stipulated that the payment included on Line 48(b) of Official Form 22C for the 1/60 of the cure amount to Seterus (due to arrearages on the rental property) should be $99.00, rather than the listed amount of $55.05. Taking this change into account, the Debtor's total allowed deductions amount to $6281.33 (not including $338.16 per month in qualified retirement deductions, as provided on Line 55). Using these figures, the Debtor has a projected disposable income of negative $367.91 per month.

The Plan provides that the Debtor will make monthly payments of $769.00 for sixty months.[8] The proposed monthly Plan payments exceed the amount of the Debtor's projected disposable income. In this regard, the Objection must be overruled because the Plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." § 1325(b)(1)(A), (B).

The Trustee next argues that the Debtor's retention of her rental property is an unreasonable expense and an indication of bad faith. The Debtor currently receives $950.00 in income from the rental property. The Debtor's secured obligations on the rental property amount to $1182.19 per month. The Trustee further alleges that the real estate taxes on the rental property amount to $195.00 and that the rental property is operating at a $444.00 monthly loss.

---

[8] As the Debtor's current monthly income exceeds the median income in Virginia for a household of two, the Debtor's applicable commitment period is five years. § 1325(b)(4).

The Court does not find this argument compelling. First, excluding expenses associated with retaining the rental property would not result in a material change in the calculation of the dividend unsecured creditors could expect to receive. If the Debtor were to apply all of those expenses to the calculation of her projected disposable income the result would only increase that income figure from a negative $367.91 per month to a positive $76.09 per month. The portion of the Debtor's proposed Plan payment allocated to the payment of unsecured claims already far exceeds that amount.

Second, forcing the Debtor to liquidate the rental property may not necessarily result in any savings whatsoever. Disposition of the real estate will require the Debtor to incur the expenses of preparing it for sale, hiring professionals, and marketing the property. The property may very well sell at a loss, as the fair rental value does not support the secured debt that encumbers it. Accordingly, the Court will not find that the rental property is an unreasonable expense or an indicator of bad faith.

In order to be confirmed, however, the Plan must satisfy all of the conditions contained in section 1325 of the Bankruptcy Code. Included among those provisions is the requirement that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7." *Id.* § 1325(a)(4). At the continued hearing on August 7, the Debtor acknowledged that the Plan failed to meet this test. The Debtor and the Trustee stipulated that unsecured creditors would receive approximately $31,000 if the Debtor were in a Chapter 7 liquidation. To satisfy the liquidation test, the Debtor would have to pay unsecured creditors at least $516.67 per month for 60 months. While the Debtor's current Plan provides for payments that far exceed that amount each month, the Plan

7

does not allocate the entire portion of those payments to the payment of unsecured debt.[9] The Debtor will have to submit an amended plan that will increase the monthly payments to meet this threshold. Accordingly, the Court will sustain the Trustee's Objection in this regard with leave to the Debtor to file an amended plan within twenty-one days from the issuance of this memorandum opinion in accordance with Local Bankruptcy Rule 3015-2(H)(3).

Entered:  August 16, 2013

/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

---

[9] The Debtor's current plan payment includes amounts for secured obligations, adequate protection payments, and arrearages on secured debt, which significantly reduces the amount available to unsecured creditors.

8